UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BEOM SU LEE,<br><br>     Plaintiff,<br><br>  v.<br><br>AMAZON.COM INC,<br><br>     Defendant. | CASE NO. 2:21-cv-01090-RAJ-BAT<br><br>**REPORT AND<br>RECOMMENDATION** |

   Pro se Plaintiff Beom Su Lee seeks summary judgment against Defendant Amazon.Com Inc. ("Amazon") for contributory and secondary copyright infringement. Dkt. 36. Defendant Amazon seeks summary judgment in its favor on all of Plaintiff's claims. Dkt. 37. On June 14, 2023, the Court re-noted the parties' motions to allow review and supplemental briefing related to DVDs filed by Plaintiff. *See* Dkt. 13; Dkt. 39, p. 2; Dkt. 54. Having reviewed the parties' motions, summary judgment evidence, supplemental briefing (Dkts. 54, 55, 56, and 57), and balance of the record, the undersigned recommends Plaintiff's motion be denied and Amazon's motion be granted.

<u>FACTS</u>

A. <u>The Amazon Store and Third-Party Sellers</u>

   Amazon operates a store on its website, amazon.com, where Amazon sells products and permits independent third parties to sell products. Dkt. 38, Declaration of Chad Bundy ¶ 2. Amazon does not control the products third parties sell nor does it control the information third

REPORT AND RECOMMENDATION - 1

parties put into Amazon's system to provide customers detail about the product(s) sold. *Id*.

To sell in Amazon's store, third-party sellers must abide by the Amazon Business Solutions Agreement ("BSA") and incorporated Program Policies. Dkt. 38, Ex. A. Under the BSA, sellers represent and warrant that they "ha[ve] all requisite right, power, and authority to enter into this Agreement, perform [their] obligations, and grant the rights, licenses, and authorizations in this Agreement." *Id*. Ex. A § 5. The Program Policies prohibit copyright infringement and make clear sellers "must comply with all federal, state, and local laws" and "may not violate the IP rights of brands or other rights owners." *Id*. Ex. B (Amazon's Intellectual Property Violations Policy).

Amazon takes copyright infringement seriously and provides detailed instructions for reporting infringement. Dkt. 38, Bundy Decl. ¶ 4. Amazon's Conditions of Use, to which all users agree, provides a link to a form to report copyright infringement. *Id*. Upon receiving a notice of infringement, Amazon investigates and takes appropriate action. *Id*. ¶ 5. If Amazon determines a notice of infringement meets the criteria set forth in the Digital Millennium Copyright Act, 17 U.S.C. § 512(c)(3), Amazon removes the content, notifies the third-party seller it has done so and may suspend the seller's selling privileges if Amazon determines the third-party seller is a repeat infringer. *Id*.

B.    <u>The Allegedly Infringed Work</u>

Jae Ho Lee was a South Korean composer (1919-1960). Dkt. 1, ¶¶ 4, 6. Jae Ho Lee composed over 2,000 musical works between 1937-1960. *Id.*, ¶ 5. In 2010, fifty years after his death, his work fell into the public domain in South Korea. *Id*. Ex. 29. After his death, the copyrights to the works of Jae Ho Lee passed to his family. Dkt. 1, Exs. 1 and 3; Dkt. 39, Herd Decl., Ex. A Lee Dep. 17:09-17:12. According to the translation of an excerpt of the Korean

Civil Code provided by Plaintiff, if there are several heirs of the same priority, they become joint heirs. Dkt. 36, Ex. 8.

   In October 1999, Plaintiff registered the copyright in "The Collection of Lee, Jae Ho's Compositions" (the "Songbook"). Dkt. 1, Ex. 1. The Songbook (which is in Korean) contains sheet music and lyrics for 125 songs. Dkt. 1, ¶ 5. A Certificate of Registration, TX5-432-807 was issued by the United States Copyright office in 2001. The Title of the Work on the Certificate of Registration is "The Collection of Lee, Jae Ho's Compositions." Above the title in parenthesis, is written "(125 Songs Listed Inside the book)". The nature of the work is described as "The Korean Popular Song (Lyrics)." Dkt. 1, Ex. 1. The Certificate of Registration reflects the application was made by Copyright Claimants "Beom Su Lee (Son) and Jung Sun Kim (wife) — by will a legal transferee—" and was received by the Copyright Office on October 12, 1999. *Id.*

   On August 1, 2001, Plaintiff's brother, Beom Seung Lee, as "primary successor to the late Mr. Jae Ho Lee" "exclusively assign[ed] the entire legal rights for the work products of the late Mr. Jae Ho Lee's that are presently registered with Korean Music Copyright Association (as well as the work products that are planned to be additionally registered) to Beom Su Lee (the 4th son)…". Dkt. 36, Ex. 3. Plaintiff testified the assignment from his brother was necessary because the Korean Copyright Association will distribute royalties to only one successor of the immediate family –  Beom Seung Lee, the first son. Dkt. 39, p. 8.

   Plaintiff also testified the registration deposit consists solely of the Songbook. *Id*. ¶ 8. Plaintiff acknowledges that, for most of the songs, J. Lee wrote only the compositions, not the lyrics. Dkt. 39, Herd Decl. Ex. A at 16:10-17:8. Plaintiff admits he does not have a registration for any of the songs individually. *Id*.

REPORT AND RECOMMENDATION - 3

1   Plaintiff licensed the collection of music from the Songbook to various entities,

2   including third-party sellers on amazon.com. Dkt. 39, Herd Decl. Ex. B. Licenses produced by

3   Plaintiff in discovery range from $2,500 to $4,000. *Id*. Ex. A at 33:17-34:6. Plaintiff attached

4   additional license agreements, not produced in discovery, with license fees redacted, to his

5   summary judgment motion, which he filed on November 18, 2022. Dkt. 36, ¶ 8, Ex. 55 (9/25/21

6   License with Biz Buy International and two (2) copies of a 9/27/21 License with Red Tab Inc.)

7   The licenses do not specify whether they are for the compositions, sound recordings, or lyrics, or

8   some combination thereof. Dkt. 39, Herd Decl. Ex. B. Plaintiff has not licensed individually any

9   compositions, sound recordings, or lyrics from the Songbook. *Id*.

10   For purposes of its motion for summary judgment only, Amazon does not challenge the

11   validity of Plaintiff's copyright. Dkt. 37, n.2. In response to Plaintiff's motion for summary

12   judgment, Amazon argues there are genuine issues of material fact regarding Plaintiff's

13   ownership of a valid copyright in the compilation. Dkt. 40, pp. 2-3.

14   C.   Plaintiff's Attempts to Contact Amazon and This Lawsuit

15   In July 2021, Plaintiff submitted five takedown requests to Amazon through its online

16   Report Infringement form. Dkt. 38, Bundy Decl. ¶ 6. According to Amazon, all five submissions

17   were either inaccurate, incomplete, or contained insufficient information. *Id*. None identifies by

18   song title or with any other specificity the copyrighted work Plaintiff claims to own or the songs

19   he claims are infringing. *Id*. ¶ 7. (The takedown requests also referenced a separate karaoke

20   machine, Kum Young Karaoke, which Plaintiff acknowledges is not at issue in this lawsuit. Dkt.

21   39, Herd Decl. Ex. A at 59:20-23.) Also, according to Amazon, Plaintiff inaccurately represented

22   in three of the takedown requests that he was the rights owner for "TJ Media Karaoke," implying

23   that he was reporting a product that he manufactured (although the actual manufacturer of the

machines is TJ Taijin Media ("TJ Media"). *Id*. ¶ 8. Amazon rejected Plaintiff's submissions, notifying him that the "notices [he had] submitted to Amazon [were] invalid or inaccurate." Dkt. 1 ¶ 8. The takedown notices are not attached to Mr. Bundy's declaration and Plaintiff has produced only one takedown notice. Dkt. 26, Ex. 33. Plaintiff describes this exhibit as "excerpts from the emails sent to Beom Su Lee by Amazon":

> "From: International Artists Company Lee
> Sent: Tuesday, July 27, 2021 4:39 PM
> To: copyright@amazon.com
> Subject: Complaint ID: 8615648761
>
> Dear Amazon,
>
> I am the exclusive copyright holder of Jae Ho Lee music, registered with the US Copyright Office. (Reg.#: TX5-432-807)
>
> TJ Media Karaoke and Kum Young Karaoke machines recorded and contained the 47 of Beom Su Lees father, Jae Ho Lee's Musical Works.
>
> I have already notified K-Digital of copyright infringement, but K-Digital continues to ignore my notice and sell TJ Media on Amazon. Amazon seller K-Digital continues to illegally infringe the copyright of Jae Ho Lee's music through the sale of TJ karaoke.
>
> > ASIN B01MCRAMWN, B08GPMG34M, B08VNJPD1Z, B01MA1IUY2, B08GP6PP31, B00Y7KL60M
> >
> > Link:https://www.amazon.com/s?k=tj+karaoke&ref=nb_sb_noss_1
>
> I strongly urge Amazon to stop this illegal activity immediately.
> Please find the attached files for reference.
>
> "Your Report of Rights Infringement on Amazon.com
> interwin77@yahoo.com Wed, May 27, 2020 at 1:47 PM
> Yahoo/Draft

Dkt. 36, Ex. 33.

Amazon represents it has now removed K-Digital's listings of "TJ TKR-365K Karaoke Machine" from Amazon.com. Dkt. 33 (Joint Status and Discovery Plan).

1

D.    <u>Plaintiff's Allegations and Evidence</u>

2

Plaintiff alleges a karaoke machine manufactured by TJ Media and sold by K-Digital on

3

amazon.com, infringed his copyright in the Songbook. *See* Dkt. 1, Exs. 4 and 19. Plaintiff alleges

4

he found 49 works of Jae Ho Lee on the TJ Media Karaoke machine. Dkt. 36, p. 12. Plaintiff

5

refers to Exhibits 4 and 19 for this allegation. The exhibits are screenshots taken from a

6

computer showing the K-Digital's TJ Media Karaoke Machine for sale on amazon.com (Ex. 4)

7

and a second unclear screenshot of what looks to be a different karaoke machine sold by K-

8

Digital on amazon.com (Ex. 19). The screenshots are incomplete and impossible to understand.

9

Attached as Exhibit 11 to Plaintiff's complaint are photographs of a TJ Media Karaoke machine

10

he acquired on amazon.com with excerpts from the song list for Model TKR-355 HK. Dkt. 10,

11

Ex. 11.

12

Amazon has no knowledge of what songs can be played or came pre-loaded on the TJ

13

Media karaoke machine, which is advertised by third-party sellers as "support[ing]" more than

14

41,000 songs (including those that can be added by users). Dkt. 38, Bundy Decl. ¶ 10. Song titles

15

for the songs preloaded on TJ Media karaoke machines do not appear in any information third-

16

party sellers provide to Amazon. *Id.* Also, K-Digital represented to Amazon it had all rights to

17

sell the machines and that the sale of the machine did "not violate the IP rights of brands or other

18

rights owners." Dkt. 38, Ex. B.

19

Plaintiff sent to Defendant's counsel, a USB stick containing live videos of 52 works of

20

Jae Ho Lee's music and two DVDs of "video evidence." Dkt. 49, ¶ 2; Dkt. 11, Ex. 13. Plaintiff

21

states he received an email confirmation that counsel received this information. *Id.* Although

22

Plaintiff provided a USB drive, it was unclear that all photographs and videos of the live

23

performance from TJ Karaoke referred to in Plaintiff's opposition were produced to Amazon.

Thus, on June 14, 2023, the Court provided a copy of Exhibit 13 to Amazon's counsel on a flash drive. Dkt. 53.[1] Plaintiff also provided a Chart, listing portions of the Songbook he claims were infringed, and the songs purportedly on the karaoke machine he claims are infringing. Dkt. 39, Herd Decl., Ex. C (Attachment 5 to Plaintiff's deposition). Plaintiff's list includes those works of his father that are "listed in the TJ Media… Song Book." He lists the page and title of the work contained in Jae Ho Lee's collection with the corresponding page, title, .... and song number, contained in the TJ Media Karaoke Song Book. *Id.* Plaintiff did not produce any supporting documentation for the Chart.

Plaintiff appears to claim that at least one model of a TJ Media karaoke machine is infringing. Dkt. 1 Ex. 4. When asked for support for this assertion during his deposition, Plaintiff explained his evidence consists of: (1) his belief that "it's almost unimaginable to not include his [father's] songs because they're very famous" and (2) videos he recorded "in karaoke rooms that are playing songs by Jae Ho through TJ manufactured karaoke machine, and the song books that go with them." Dkt. 39, Herd Decl. Ex. A at 42:1-14. When asked why he had not produced this evidence, Plaintiff stated "they were not related to this lawsuit." *Id.* at 42:15-18. Plaintiff relies on an assertion "it's a fact that the machines that are manufactured by TJ … and sold by Amazon contain songs by Jae Ho Lee, that's a fact." *Id.* Ex. A at 42:19-23.

On November 18, 2022, Plaintiff filed his motion for summary judgment. Dkt. 36. Plaintiff asserts that "[a]ll evidence was secured through photography and video recording (Live performance)." *Id.* Plaintiff argues that Exhibits 4 and 19 to the motion show proof of

---

[1] The Court's June 14, 2023 Order Re-Noting Motions for Summary Judgment references "2 DVDs," Dkt. 53 at 1; *see also* Dkt. 11 ("Receipt of 2 DVDs containing Exhibit 13 in Support of Complaint ...."). The Court directed the Clerk to download the DVDS to flash drives for ease of reference. The Clerk discovered there were two DVDs in one case and one DVD in another and these resulted in three folders labeled "21cv1090, Exhibit 13-DVD1"; "21cv1090, Exhibit 13-DVD2"; and "21cv1090, Exhibit 13-DVD3" on the flash drives. The Court's docket at Exhibit 13 has been correct to reflect the submission of three DVDs.

REPORT AND RECOMMENDATION - 7

1  infringement and in a surreply, Plaintiff points to the DVDs discussed above. Dkt. 49; *see also*

2  Dkt. 53.

3  <u>SUMMARY JUDGMENT STANDARD</u>

4  Summary judgment is proper "if the movant shows that there is no genuine dispute as to

5  any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

6  56(c). The Court must view the evidence in the light most favorable to the non-moving party and

7  draw all "justifiable inferences" in that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S.

8  242, 255 (1986). Where there is no admissible evidence demonstrating the existence of a genuine

9  issue of material fact, the moving party may prevail simply by "pointing out to the district court

10 … that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v.*

11 *Catrett*, 477 U.S. 317, 325 (1986). In response, "its opponent must do more than simply show

12 that there is some metaphysical doubt as to the material facts…. Where the record, taken as a

13 whole, could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

14 issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v.*

15 *Zenith Radio Corp*., 475 U.S. 574, 586–87 (1986)).

16 When ruling on simultaneous cross-motions for summary judgment on the same claim,

17 the court must consider evidentiary material identified and submitted in support of both motions

18 and in opposition to both motions before ruling on each. *Tulalip Tribes of Wash. v. Washington*,

19 783 F.3d 1151, 1156 (9th Cir. 2015) (quoting *Fair Hous. Council of Riverside Cty., Inc. v.*

20 *Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001)).

21 <u>DISCUSSION</u>

22 Plaintiff seeks summary judgment on his claim that Amazon contributed to K-Digital's

23 infringement of his copyright. Plaintiff seeks statutory damages pursuant to 17 U.S.C. §

504(C)(1) for "each act of willful infringement" of 49 musical works. Dkt. 36, p. 15. Amazon

seeks summary judgment on Plaintiff's claims for failure to provide admissible evidence of

contributory infringement. Dkt. 37. Alternatively, Amazon argues any award of statutory

damages is limited to one award because the copyright covers a *collection* of works and not each

song. *Id.* Both motions require evidence of a valid copyright, direct infringement by Amazon or

K-Digital, and contributory infringement by Amazon.

A.      Direct Copyright Infringement

        A *prima facie* case of direct copyright infringement requires a plaintiff to prove both (1)

"ownership of the allegedly infringed material" and (2) "the alleged infringers violate[d] at least

one exclusive right granted to copyright holders under 17 U.S.C. § 106." *Perfect 10, Inc. v.*

*Amazon.com, Inc*., 508 F.3d 1146, 1159 (9th Cir. 2007) (quoting *A&M Recs., Inc. v. Napster*,

Inc., 239 F.3d 1004, 1013 (9th Cir. 2001)). The Act lists five exclusive rights. 17 U.S.C. § 106.

Relevant to this action are the exclusive rights of the owner to reproduce the copyrighted work

and to distribute copies of the copyrighted work to the public by sale or other transfer of

ownership. 17 U.S.C. § 106(1), (3).

        (1)     Ownership of Copyright

        For purposes of its motion for summary judgment, Amazon does not dispute Plaintiff's

ownership of the copyright. Dkt. 37, p. 9, n.2. In response to Plaintiff's motion, Amazon

contends there are issues of fact as to Plaintiff's ownership of the copyright because Plaintiff has

failed to provide sufficient evidence of his inheritance and he filed the copyright application two

years before "one of his brothers transferred the copyright to him." Dkt. 40 at 6.

        A copyright registration is "*prima facie* evidence of the validity of the copyright and the

facts stated in the certificate." 17 U.S.C. § 410(c); *see also S.O.S., Inc. v. Payday, Inc*., 886 F.2d

1    1081, 1085 (9th Cir. 1989). Thus, Amazon has the burden of rebutting the facts set forth in the

2    copyright certificate. *S.O.S.*, 886 F.2d at 1085-86 (section 410(c)'s presumption shifts the burden

3    of coming forward with evidence to the defendant).

4          The effective date of Plaintiff's Certificate of Registration is August 6, 2001, and the

5    publication date is October 10, 1996. Dkt. 36, Ex. 1. Because the Certificate of Registration was

6    effective within five years of the first publication of the work, it constitutes *prima facie* evidence

7    of the validity of the copyright and of the facts stated therein. 17 U.S.C. § 410(c); *See also*,

8    *United Fabrics Intern, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir.2011) (citing *S.O.S.*,

9    886 F.2d at 1085.

10         The application for the Certificate of Registration made by Copyright Claimants "Beom

11   Su Lee (Son) and Jung Sun Kim (wife) — by will a legal transferee—" was received by the

12   Copyright Office on October 12, 1999. *Id.* According to the Korean Civil Code if there are

13   several heirs of the same priority, they become joint heirs. Dkt. 36, Ex. 8 (translation of excerpt

14   provided by Plaintiff).

15         On August 1, 2001, Plaintiff's brother, Beom Seung Lee, "exclusively assign[ed] the

16   entire legal rights for the work products of the late Mr. Jae Ho Lee's that are presently registered

17   with Korean Music Copyright Association (as well as the work products that are planned to be

18   additionally registered) to Beom Su Lee (the 4th son) …". Dkt. 36, Ex. 3. The assignment from

19   Plaintiff's brother was necessary because the Korean Music Copyright Association will

20   distribute royalties to only one successor of the immediate family and Beom Seung Lee, as the

21   eldest son, was the primary successor to the late Jae Ho Lee. Dkt. 39, p. 8.

22         Based on the foregoing, the undersigned concludes Amazon has failed to rebut the facts

23   stated in the Copyright Registration and Plaintiff has established he is the owner of a valid

REPORT AND RECOMMENDATION - 10

copyright in the works at issue.[2]

2.    <u>Direct Evidence of Copying</u>

As direct evidence of infringement, Plaintiff presents video footage of karaoke songs being played on a karaoke machine purchased by Plaintiff's friend from amazon.com. Plaintiff obtained the TJ Media Karaoke Song Book in the same manner. Plaintiff contends the Song Book contains his father's music. Dkt. 57, p. 4. Plaintiff states he took the videos using his mobile phone, the videos have not been modified, and the Chart of his father's work can be translated and presumably, compared to the Song Book. *Id.*, p. 7.

Plaintiff contends specific details such as is the machine was purchased on amazon.com and whether the machines came pre-loaded with the music are not necessary to authenticate the videos. Plaintiff argues the videos serve as visual proof of the songs being performed on the karaoke machine. Dkt. 57, p. 6. The Court has reviewed the video evidence and disagrees.

There appear to be fifty-two short video recordings in which songs are played on a television in proximity to what appears to be an unidentified karaoke machine – a manufacturer label of the machine is not visible. The videos do not appear to play any songs in their entirety; do not identify the composer or other artist involved in creating any song; do not identify the copyright owner; display lyrics exclusively in a foreign language; and do not identify where the machine was purchased. Plaintiff acknowledges the videos do not play the songs in their entirety, do not identify the composer or other artists involved, and do not identify the copyright owner.

---

[2] Plaintiff brought cases in the District of New Jersey, Southern District of New York, and Central District of California claiming that karaoke bars infringed on this same copyright. These courts found Plaintiff plausibly alleged possession of a valid copyright in the relevant works. *See Lee v. Roku Karaoke*, No. 18-CV-8633 (KM)(ESK), 2022 WL 4354641, at *2 (D.N.J. Sept. 19, 2022); *Lee v. Karaoke City*, No. 18-CV-3895 (PAE), 2020 WL 5105176, at *4-6 (S.D.N.Y. Aug. 31, 2020); *Lee v. eBay*, No. 17-CV-5179 (SVW)(E), 2018 WL 1941974, at *2-3 (C.D. Cal. Feb. 8, 2018); *Lee v. 162 D&Y Corp.*, 18-cv-02580 (BC)(PK), 2023 WL 199288, at *5.

Dkt. 57, p. 6. He argues the songs being played on this karaoke machine and the presence of his father's music in the Song Book are visual evidence supporting his claim of copyright infringement because the song numbers are visible in the videos, and these numbers correspond with those listed in the Song Book.

Even assuming Plaintiff has properly authenticated the video evidence, Song Book, and Chart, the recordings are not evidence of direct infringement. It is impossible to discern from this evidence that the recordings in fact contain copyrighted music from a TJ Media machine bought on amazon.com at a time when Amazon had notice the machine contained the copyrighted music. The evidence also fails to show whether the TJ Media Karaoke machine came preloaded with music which violated Plaintiff's copyright or if the music was loaded from another possibly legitimate source.

Plaintiff also relies on "Exhibit 23" as proof of infringement. Dkt. 43 at 5. But there is no Exhibit 23 in the record. *See* Dkts. 36-1 & 43. To the extent Plaintiff intended to cite Exhibit 42, *see* Dkt. 43 at 28, this exhibit does not substantiate his claim. Exhibit 42 appears to be photographs of packaging purportedly containing a karaoke machine sold and shipped by GG Tech from South Korea to Sae-Young Rhee that Plaintiff claims contains a song ("#724") composed by his father. But this unauthenticated and incomplete document shows only that a non-defendant, GG Tech, appeared to ship something to a nonparty, Sae-Young Rhee.

Plaintiff has provided no credible evidence that any copyrighted materials are present or playable on the accused karaoke machines. Plaintiff has also submitted no evidence to show that Amazon had access to Plaintiff's copyrighted work and that the two works are "substantially similar." *Antonick v. Elec. Arts, Inc.*, 841 F.3d 1062, 1065 (9th Cir. 2016) (absent direct evidence of copying, proof of infringement involves fact-based showings that the defendant had 'access'

to the plaintiff's work and that the two works are 'substantially similar.'")

Substantial similarity requires using a two-part test to compare the allegedly infringing work with the allegedly infringed work. *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir.), *cert. denied*, 141 S. Ct. 453 (2020). The first part of the test, "the extrinsic test, compares the objective similarities of specific expressive elements in the two works[,]" *id.*, such as, for musical compositions, structure, melody, harmony (the use of chords), rhythm, and lyrics, and "requires analytical dissection of a work and expert testimony." *Swirsky v. Carey*, 376 F.3d 841, 845, 849 (9th Cir. 2004) (citation & internal quotation marks omitted). Because only substantial similarity in protected expression satisfies the extrinsic test, "it is essential to distinguish between the protected and unprotected material in a plaintiff's work." *Skidmore*, 952 F. 3d at 1064 (quoting *Swirsky*, 376 F.3d at 845). The extrinsic test also requires considering the similarities between two works. *Funky Films, Inc. v. Time Warner Ent. Co.*, 462 F.3d 1072, 1077-78 (9th Cir. 2006), *overruled on other grounds*, *Skidmore*, 952 F.3d 1051. Analytical dissection of music includes preparing and comparing musical transcriptions to identify objective similarities and identifying and excluding unprotectable elements. *Id.*, 952 F.3d at 1069-70. "[A] plaintiff who cannot satisfy the extrinsic test necessarily loses on summary judgment[.]" *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994); *Hayes v. Minaj*, 2013 WL 11328453, at *8 (C.D. Cal. Mar. 7, 2013) (granting summary judgment motion where pro se plaintiff "failed to present evidence, much less expert testimony to shore up 'indicia of a sufficient disagreement concerning the substantial similarity of the two works'") (quoting *Swirsky*, 376 F.3d at 844)).

Here, it is impossible to evaluate if the content of the video recordings is substantially similar to Plaintiff's copyrighted works. Plaintiff has not articulated any basis for the alleged

infringement — *i.e.*, whether he claims Amazon infringed the copyright in compositions, sound recordings, or lyrics.[3] Even assuming Plaintiff had sufficiently identified the works, he does not purport to compare them in any detail. He does not explain what portions are protected nor does he identify differences. Plaintiff provides no evidence, much less expert testimony, to show a substantial similarity between the music on the karaoke machine in his videos and the copyrighted works of his father.

Based on the foregoing, the Court concludes Plaintiff has failed to satisfy his burden to establish any infringement—either by Amazon or K-Digital— and therefore, summary judgment for Amazon is proper. *See, e.g.*, *A&M Recs.*, 239 F.3d at 1013 n.2 ("Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party.").

To the extent the Court considers the evidence submitted by Plaintiff sufficient to raise a material question of fact as to direct infringement, the undersigned concludes there is no evidence of inducement or material contribution by Amazon to support Plaintiff's claim of secondary liability.

B.    Contributory Infringement

To establish a claim for contributory copyright infringement, Plaintiff must show: (1) direct infringement by a primary infringer, (2) knowledge of the infringement, and (3) inducement or material contribution to the infringing conduct. *Metro–Goldwyn–Mayer Studios, Inc. v. Grokster Ltd.*, 380 F.3d 1154, 1160 (9th Cir. 2004), *rev'd on other grounds*, 545 U.S. 913 (2005) (citing *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir.2004)); *see also Perfect 10, Inc. v. Vista Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007).

---

[3] Plaintiff acknowledged during his deposition that J. Lee did not write the lyrics for the majority of the songs in the Songbook. Dkt. 39 Ex. A at 16:10-17:8

1    **1.    Direct Infringement**

2    For the reasons set forth above, Plaintiff has not shown direct infringement by either

3    Amazon or K-Digital. For purposes of this analysis only, it is assumed direct infringement has

4    been shown.

5    **2.    Knowledge of Alleged Infringement**

6    To establish knowledge, Plaintiff must offer evidence of "more than a generalized

7    knowledge by the [Amazon] of the possibility of infringement." *Luvdarts, LLC v. AT & T*

8    *Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013). He must establish Amazon knew about

9    specific instances of alleged infringement. *Davis v. Pinterest, Inc*., 2021 WL 879798, at *3

10    (N.D. Cal. Mar. 9, 2021).

11    Plaintiff claims Amazon had knowledge of the alleged infringement because it "signed a

12    contract with third party seller K-Digital to sell TJ Karaoke." Dkt. 43 at 7. However, third-party

13    sellers on Amazon undisputedly "control the products they sell" and do not contract with

14    Amazon to sell specific products. Dkt. 38 ¶ 2; *id.*, Ex. A. Moreover, it is undisputed that K-

15    Digital, like all third-party sellers, represented the products it sold did not "violate the IP rights

16    of brands or other rights owners." *Id*., Ex. B.

17    Plaintiff also relies on Amazon's alleged failure to "tak[e] action" despite "plaintiff's

18    several notices of infringement." Dkt. 43 at 9. Other than an email notice dated July 27, 2021

19    (discussed below), Plaintiff did not submit the "several notices of infringement." According to

20    Chad Bundy, A Notice and Takedown Manager at Amazon, Amazon does not have the "practical

21    ability to supervise the millions of" third-party sellers "who utilize its … services." *King v.*

22    *Amazon Corp*., 2019 WL 6404882, at *5 (W.D.N.C. Nov. 27, 2019) (dismissing claims for direct

23    and secondary infringement). Thus, when reviewing a notice of infringement, Amazon relies

1    primarily on the information contained in the takedown notice, as a rights owner is in the best

2    position to know what it owns, what licensing agreements it has entered and what it believes is

3    infringing. Dkt. 38, Bundy Decl. ¶ 5.

4        Plaintiff submitted five takedown requests through Amazon's online Report Infringement

5    form using the email address interwin77@yahoo.com. According to Mr. Bundy, all five

6    submissions were either inaccurate, incomplete, or contained insufficient information and none

7    of the takedown notices identified by song title or in any discernable way the song titles Plaintiff

8    claimed to own or the songs he claims were infringing. *See* Dkt. 37 at 8-9; Dkt. 38, Bundy Decl.,

9    ¶ 6. The notices also contained inconsistent information claiming (incorrectly) that Plaintiff was

10   the manufacturer of the TJ Media karaoke machine. *Id.*, Bundy Decl. ¶ 8; *see also Rosen v.*

11   *Hosting Servs., Inc*., 771 F. Supp. 2d 1219, 1222 (C.D. Cal. 2010) (granting summary judgment

12   on contributory infringement claim because takedown notices with inherently inconsistent

13   information were insufficient to show knowledge of alleged infringement). In other words,

14   because Plaintiff "did not provide effective notice, knowledge of infringement may not be

15   imputed to [Amazon] based on [Plaintiff's] communications." *Perfect 10, Inc. v. CCBill LLC*,

16   488 F.3d 1102, 1113 (9th Cir. 2007) (affirming summary judgment when notices were not

17   sufficient to convey knowledge of allegedly repeated infringement).

18       In the July 27, 2021 notice (the only notice attached to Plaintiff's motion), Plaintiff

19   identified himself as the exclusive owner of Copyright Registration TX5-432-807 and advised

20   the TJ Media machine sold by K-Digital improperly recorded and contained 47 musical works.

21   The notice also contained Amazon's Standard Identification Numbers (ASINs) linked to the

22   karaoke machines at issue. Dkt. 36, Ex. 33. Mr. Bundy identified these ASINs as being linked to

23   karaoke machines manufactured by TJ Media; three of which were sold by third-party seller K-

Digital and one of which was sold by third-party seller WITH US COMPANY. Dkt. 38, Bundy

Decl., ¶ 9. Amazon has never sold karaoke machines manufactured by TJ Media and has no

knowledge regarding the music either preloaded on or playable by the karaoke machine(s). Song

titles for the songs preloaded on TJ Media karaoke machines do not appear in any information

third-party sellers provide to Amazon. Based on the information provided by third-party sellers

who sold the TJ Media karaoke machine on amazon.com, the karaoke machine "supports" at

least 41,000 songs, including songs users can upload themselves. *Id.*, ¶ 10.

The information provided by Plaintiff in the takedown notice was insufficient to provide

Amazon knowledge of infringement because Plaintiff failed to identify the specific work he

claimed was infringed or the material he claimed was infringing.

    2.    <u>Inducement / Material Contribution</u>

A claim for contributory infringement requires allegations that the defendant is "one who,

with knowledge of the infringing activity, induces, causes or materially contributes to the

infringing conduct of another." *Fonovisa v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir.

1996) (brackets omitted) (quoting *Gershwin Publishing Corp. v. Columbia Artists Management*,

443 F.2d 1159, 1162 (2d Cir. 1971)); *see also Perfect 10, Inc.*, 508 F.3d at 1170 (quoting *Metro-*

*Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930, 125 S.Ct. 2764, 162 L.Ed.2d

781 (2005)) ("One infringes contributorily by intentionally inducing or encouraging direct

infringement."); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d at 1019 ("Liability exists if the

defendant engages in personal conduct that encourages or assists the infringement.")

"To establish 'inducement,'" Plaintiff must introduce evidence showing Amazon took

"affirmative steps … to foster infringement." *A'Lor Int'l, Ltd. v. Tappers Fine Jewelry, Inc.,* 2012

WL 12921035, at *5 (C.D. Cal. Aug. 8, 2012), *aff'd in part sub nom. A'lor Int'l Ltd. v. Tappers*

1   *Fine Jewelry*, 605 F. App'x 662 (9th Cir. 2015). And "[t]o establish 'material contribution,'"

2   Plaintiff must prove that Amazon "had a 'direct connection to that infringement.'" *Id*. Plaintiff

3   has not plead either requirement (*see* Dkt. 1) and this, standing alone, is fatal to his claim. *See*,

4   *e.g.*, *Mon Cheri Bridals, LLC v. Cloudflare, Inc*., 2021 WL 4572015, at *1-2 (N.D. Cal. Oct. 6,

5   2021) (granting summary judgment on contributory copyright infringement claim where

6   plaintiffs provided no evidence of material contribution); *see also ALS Scan, Inc. v. Cloudflare,*

7   *Inc*., 2016 WL 11742059, at *7 (C.D. Cal. Oct. 24, 2016) (dismissing contributory infringement

8   claim where complaint failed to allege inducement and material contribution).

9        Plaintiff's contributory infringement claim is premised solely on the allegation that he

10  reported the copyright infringement several times through Amazon's infringement reporting

11  system, Amazon rejected his requests, and failed to take any action against K-Digital. However,

12  intentional inducement requires a showing that Amazon distributed the TJ Media machine "with

13  the object of promoting its use to infringe copyright, as shown by clear expression or other

14  affirmative steps taken to foster infringement." *Grokster,* 545 U.S. at 919; *see also*, *Average*

15  *Joe's Ent. Grp., LLC v. SoundCloud, LTD*, 2018 WL 6582829, at *5-6 (M.D. Tenn. Oct. 17,

16  2018) (granting summary judgment on inducement claim where evidence showed defendant

17  "intentionally established ways to prevent and eliminate copyright infringement"). Plaintiff has

18  identified no affirmative steps taken by Amazon to foster infringement. It is undisputed the TJ

19  Media karaoke machine containing the allegedly infringing songs was sold by K-Digital and

20  Amazon played a passive role. Dkt. 38, Bundy Decl. ¶¶ 2, 10. There is no evidence indicating

21  Amazon distributed the karaoke machine with the "object of promoting its use to infringe

22  copyright." *Metro-Goldwyn-Mayer Studios Inc*., 545 U.S. at 919. The infringing content

23  allegedly contained on the TJ Media karaoke machine does not appear anywhere on

1    amazon.com: it does not appear on the product detail page or on any of the information the third

2    party provided when listing the item. Dkt. 38, Bundy Decl. ¶ 10. Amazon's passive role in

3    enabling the sale of a product that bears no indication it contains allegedly infringing content is

4    far from intentional inducement.

5           Material contribution "[i]n the online context" requires the defendant to have "actual

6    knowledge that specific infringing material is available using its system, and ... simple measures

7    [would] prevent further damage to copyrighted works, yet [the defendant] continues to provide

8    access to infringing works." *Davis*, 2021 WL 879798, at *2. Again, there is no material factual

9    dispute that Amazon had actual (or constructive) knowledge that the specific infringing material

10   was available on amazon.com. Dkt. 38, Bundy Decl. ¶ 10. Amazon's indisputably passive role in

11   a third party's sale of the TJ Media karaoke machine "does not translate to Amazon intentionally

12   inducing or encouraging [a third party] to infringe on Plaintiff's copyright." *King*, 2019 WL at

13   *5 (entering summary judgment for Amazon). Accordingly, Amazon is entitled to summary

14   judgment on Plaintiff's claim for contributory infringement.

15   D.    Willfulness and Statutory Damage Award

16          Amazon moves in the alternative, for summary judgment on Plaintiff's claim that

17   Amazon's infringement was willful and seeks a determination that if Plaintiff prevails, he is

18   entitled to only one award of statutory damages on a single work, *i.e.*, the Songbook.

19          "[T]he Copyright Act provides a plaintiff the option of electing either, statutory damages

20   or actual damages." *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*,

21   259 F.3d 1186, 1194 (9th Cir. 2001), *citing* 17 U.S.C. § 504(a). Plaintiff has elected to seek only

22   statutory damages. *See* Dkt. 39, Herd Decl. Ex. D; Ex. A at 68:8-13; 71:19-23; *see also*,

23   *Getaped.Com, Inc., v. Cangemi*, 188 F. Supp. 2d. 398, 406 (S.D.N.Y. 2002) ("Once a plaintiff

1    elects statutory damages, he or she gives up the right to seek actual damages.")

2      Plaintiff claims Amazon's infringement was willful and that he is entitled to $150,000 in

3    statutory damages for each allegedly infringed song on his list. Plaintiff claims he is entitled to

4    49 damage awards (*see* Dkt. 39, Herd Decl., Ex. D) (although his Chart includes only 27 songs).

5    *Id.*, Ex. C. Amazon argues Plaintiff is limited to one damage award as his copyright is for the

6    Songbook, not the individual songs.

7      1. <u>No Willful Infringement</u>

8      The Copyright Act presumes that statutory damages will be awarded "in a sum not less

9    than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). Only in

10   exceptional cases, where a plaintiff "sustains the burden of proving, and the court finds, that

11   infringement was committed willfully" may the court increase the award to more than $30,000.

12   *Id.* § 504(c)(2). To satisfy this burden, "the plaintiff must show (1) the defendant was actually

13   aware of the infringing activity, or (2) the defendant's actions were the result of reckless

14   disregard for, or willful blindness to, the copyright holder's rights." *Erickson Prods.,*

15   *Inc. v. Kast*, 921 F.3d 822, 833 (9th Cir. 2019) (quoting *Unicolors, Inc. v. Urban Outfitters, Inc*.,

16   853 F.3d 980, 991 (9th Cir. 2017)). Here, there is no evidence of either.

17     Here, there is no evidence of willfulness by Amazon. The undisputed facts establish that

18   third party K-Digital, sold the allegedly infringing karaoke machine (Dkt. 1 ¶ 7; Dkt. 38, Bundy

19   Decl. ¶ 9); K-Digital ignored Plaintiff's communications (Dkt. 1 ¶ 7); K-Digital was only

20   authorized to sell on Amazon's platform after it represented it was not infringing the rights of

21   any third parties (Dkt. 38, Bundy Decl. ¶ 3); and Amazon reasonably and in good faith believed

22   K-Digital had the intellectual property rights necessary to lawfully sell the karaoke machines

23   (*id.*, Bundy Decl. Exs. A-B). Plaintiff has not provided any evidence to the contrary. Where

"infringing works were produced under color of title, such as under a reasonable belief that the infringer possesses a license or implied license[,]" "willfulness does not exist." *Evergreen Safety Council v. RSA Network Inc*., 697 F.3d 1221, 1228 (9th Cir. 2012) (affirming summary judgment for defendant).

Even if the takedown notice in evidence is sufficient to show Amazon's knowledge of infringing activity, the mere receipt of takedown notices is not enough to show willfulness. *See*, *e.g*., *SA Music LLC v. Apple, Inc*., 592 F. Supp. 3d. 869 (N.D. Cal. 2022) (where Apple required "those who upload recordings to the iTunes Store contractually guarantee that they possess the necessary rights," Apple could reasonably rely on those representations, absent evidence that doing so was "unreasonable or in bad faith, …". ) *See also*, *Lee v. Korean Television Enters., Ltd*., 2:01-cv-09638 (C.D. Cal. 2001) (granting summary judgment against Plaintiff on laches; and holding that "defendant is not a willful infringer" where defendant "ceased reproducing and distributing" the allegedly infringing content "less than four months after Plaintiff notified it of its potential infringement"); 4 Nimmer on Copyright § 14.04 (2022) ("[O]ne who has been notified that his conduct constitutes copyright infringement, but who reasonably and in good faith believes the contrary, is not 'willful' for these purposes.").

Based on the foregoing, the Court concludes Plaintiff has provided no evidence of willfulness.

### 2.   Statutory Damages Award

A copyright owner may seek "an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually …" 17 U.S.C. § 504(c)(1). "[A]ll the parts of a compilation . . . constitute one work." *Id*. The term "compilation" includes collective works. *N.Y. Times Co., Inc. v. Tasini*, 533

1   U.S. 483, 494 (2001). Plaintiff obtained a single copyright—U.S. Copyright Certificate No.

2   TX5-432-80787—in one work, the Songbook. Dkt. 1 Ex. 1. The "TX" preceding the registration

3   number indicates Mr. Lee registered his copyright in a "nondramatic literary work," not in

4   musical compositions. *See* U.S. Copyright Off., Form TX for Nondramatic Literary Work,

5   https://www.copyright.gov/forms/formtx.pdf.

6         Plaintiff appears to seek statutory damages for each song within the Songbook allegedly

7   infringed. However, the Songbook constitutes one work for purposes of statutory damages. The

8   "focus[] [is] on whether the plaintiff—the copyright holder—issued its works separately, or

9   together as a unit." *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 141 (2d Cir. 2010) (cleaned

10  up) (plaintiffs could only recover one statutory damage award per album). Separate awards for

11  parts of a compilation are proper only in limited circumstances not present here. *See EMI*

12  *Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 101 (2d Cir. 2016) (permitting

13  statutory damages award for sound recording singles from an album because the plaintiff had

14  registered the copyright in some of the songs independently and sold each song individually).

15        Plaintiff admits (1) none of the songs in the compilation are registered individually for

16  copyright protection, Dkt. 39, Herd Decl. Ex. A at 65:22-25; (2) the only licenses Plaintiff has

17  issued are for the entire collection of songs, *id*. at Ex. B; and (3) the songs have never been

18  published individually in the United States. These are the circumstances in which Section

19  504(c)(1) prohibits more than a single statutory damages award. Given the statutory command

20  that "all the parts of a compilation or derivative work constitute one work," a single registration

21  for a record album containing multiple songs, several of which are infringed, will result in a

22  single statutory award for the album.  5-14 Nimmer on Copyright § 14.04. Similarly, Plaintiff

23  would be entitled to only one award of statutory damages on a single work, *i.e.*, the Songbook.

1

CONCLUSION

2      The Court recommends the District Judge deny Plaintiff's motion for summary judgment

3   (Dkt. 36) and grant Amazon's motion for summary judgment (Dkt. 37). Plaintiff has failed to

4   provide admissible evidence raising genuine issues of material fact as to whether Amazon

5   directly infringed his copyrighted works or that Amazon knew about or induced infringement by

6   another. Alternatively, if he prevails, the Court should find Plaintiff is entitled to just one

7   statutory damages award for non-willful infringement.

8

OBJECTIONS AND APPEAL

9      This Report and Recommendation is not an appealable order.  Therefore, a notice of

10   appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

11   assigned District Judge enters a judgment in the case.

12      Objections, however, may be filed and served upon all parties no later than **August 17,**

13   **2023**. The Clerk should note the matter for **August 18, 2023**, as ready for the District Judge's

14   consideration if no objection is filed.  If objections are filed, any response is due within 14 days

15   after being served with the objections.  A party filing an objection must note the matter for the

16   Court's consideration 14 days from the date the objection is filed and served.  The matter will

17   then be ready for the Court's consideration on the date the response is due.  Objections and

18   responses shall not exceed 10 pages.  The failure to timely object may affect the right to appeal.

19      DATED this 27th day of July, 2023.

20

21

22   BRIAN A. TSUCHIDA
     United States Magistrate Judge

23

REPORT AND RECOMMENDATION - 23